Rehearing granted, October 25, 2005 for the limited purpose of modifying opinion

**MODIFIED OPINION**

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 04-4624**

―――――――――

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

VICTOR CATALA,

Defendant - Appellee.

―――――――――

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.   Jerome B. Friedman, District Judge. (CR-04-6)

―――――――――

Argued:  March 18, 2005                Decided:  June 14, 2005

Modified Opinion Filed:  October 25, 2005

―――――――――

Before WILKINSON and GREGORY, Circuit Judges, and Frederick P. STAMP, Jr., United States District Judge for the Northern District of West Virginia, sitting by designation.

―――――――――

Affirmed by unpublished opinion.  Judge Stamp wrote the majority opinion, in which Judge Gregory joined.  Judge Wilkinson wrote a dissenting opinion.

―――――――――

**ARGUED:** Michael James Elston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant.  Robert Wayne Nunnally, Norfolk, Virginia, for Appellee.
**ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellant.

------------

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

STAMP, District Judge:

The United States appeals the sentence of defendant, Victor Catala ("Catala"), who pleaded guilty to conspiring to distribute 100 or more kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). At Catala's sentencing hearing, the district court determined that only 83.9 kilograms of marijuana were attributable to the defendant. The district judge granted a three-level downward departure for acceptance of responsibility absent a government motion, and also granted the additional two-level reduction under the safety valve provision, U.S.S.G. §§ 3E1.1 and 2D1.1(b)(6).

The issue before this Court is whether the district court erred by finding Catala responsible for only 83.9 kilograms when the defendant pleaded guilty to conspiring to distribute 100 or more kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). In addition, we must consider whether the district court appropriately applied the three-level downward departure under the now advisory United States Sentencing Guidelines.

I.

As stated above, the defendant Catala entered into a plea agreement with the United States for conspiring to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1), which was the lesser included offense in Count 1 of an eleven-count

3

indictment. J.A. 54.[1] The plea agreement stated that the maximum penalty for the lesser included offense was a term of imprisonment of five years, a maximum term of 40 years, a fine of $2 million and at least four years of supervised release. Id. However, the plea agreement did not state the amount of marijuana that the government believed should be attributed specifically to Catala.

At the sentencing hearing, the district court reviewed the defendant's plea agreement. The district court stated that to convict the defendant, the government would have to prove each essential element of his crime, including, "one, that you willfully entered into an agreement, two, with one or more other individuals, and three, to knowingly or intentionally possess with intent to distribute marijuana." J.A. 70. The district court did not mention drug weight as an element of the defendant's crime.

After enumerating the elements of the defendant's crime as charged, the court stated, "Now, I understand [the defendant is] pleading guilty to something else . . ." J.A. 70. The court then addressed the term "lesser included offense" as used in the defendant's plea agreement:

> THE COURT: Now, you all indicate that he's pleading guilty to what we call a lesser included offense. I'm not really sure it's a lesser included offense. I think it has more to do with drug weights more than anything else, because if the government proffers to the Court that it can't prove the thousand or more kilograms of

---

[1] Catala was one of seven defendants charged in this indictment.

4

marijuana but can only prove a hundred or more kilograms of marijuana, then I'm going to tell him what the maximum punishment is for that offense, and that's what he's going to be subject to. So I don't know anything more about the case other than, you know, what [the Government] knows and what [defendant's counsel knows].

But I understand that what he's going to do is he's going to be pleading guilty to the same offense, but in lieu of it being a thousand or more kilograms, it's going to be a hundred or more kilograms. And if that's the case, then he would be facing a maximum of 40 years in prison and a mandatory minimum of five years in prison and a fine not to exceed $2 million. Is that you-all's understanding?

MR. NUNNALLY (Defendant's Counsel): Yes, sir, Your Honor. With the further understanding that we are going to be able to argue the amount of weight at sentencing.

THE COURT: Well, you can always do that. But the point is, and, Mr. Hurt, you understand that obviously if for some reason the presentence report comes back and it's more than a hundred kilograms of -- in other words, more than a thousand grams -- kilograms of marijuana, then he's only pleading guilty to the lesser charge, correct?

MR. HURT (Government): Yes, sir. That's the government's understanding.

J.A. at 71-72 (emphasis added).

Later in the plea hearing, the defendant admitted that he had "transported and conspired to transport" to the Virginia peninsula in excess of 100 kilograms of marijuana, but less than 1000 kilograms of that substance. J.A. 87.

Following the plea hearing, a presentence report was submitted to the court in which the probation officer described seven cross-country trips by Catala for the purpose of transporting marijuana and an additional trip to transport methamphetamine. J.A. 166-68.

5

The probation officer stated that 638 telephone calls were made between the defendant and several co-defendants.  J.A. 166.  The probation officer determined that the scope of the defendant's criminal activity included 219.9 kilograms of marijuana and a pound of methamphetamine, which converted to 1,127.196 kilograms of marijuana.  J.A. 168.

Accordingly, the probation officer recommended a base offense level of 32.  J.A. 184.  The probation officer also recommended the defendant receive three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  In addition, the probation officer found that the defendant qualified for the two-level safety valve reduction pursuant to U.S.S.G. § 2D1.1(b)(6).

The defendant filed written objections to the presentence report denying certain trips described in paragraphs 33 though 37 of the presentence report, denying that he transported methamphetamine, and objecting to any finding that the defendant participated in transporting more than 335 pounds of marijuana. J.A. 98-100.  The defendant also argued that the probation officer had misconstrued several phone calls as related to the conspiracy, but which he alleged were only made to family members.  J.A. 97. Several days after his initial objections, the defendant filed corrections to his objections, the most significant of which lowered attributable marijuana drug weight from 335 pounds to 175 pounds.  J.A. 103.

6

Following the defendant's objections, the probation officer amended the presentence report by removing the three-level adjustment for acceptance of responsibility. However, a two-level safety valve reduction remained, apparently in error. J.A. 107-08. Consequently, the probation officer recommended an offense level of 30 and a Guideline range of 97 to 120 months.

At the sentencing hearing, the district court addressed the plaintiff's objections to the presentence report and determined that the government had the burden of proving drug weight by a preponderance of evidence. J.A. 118. The United States responded that the defendant had entered into his plea agreement admitting to conspiracy to possess with intent to distribute more than 100 kilograms of marijuana and that the defendant had repeated this admission in open court at his change of plea hearing. The government argued that the defendant's July 8 letter putting forth a weight below 100 kilograms should be construed as an abandonment of acceptance of responsibility because the defendant had abandoned the drug weight upon which the plea agreement was premised.

The defendant responded that he had raised the issue of drug weight at the time of the hearing, and that the Court had indicated that drug weights could always be argued at sentencing. The defendant argued that challenging drug weight at the sentencing stage was not the equivalent of abandoning his acceptance of responsibility.

The district court recognized that the defendant pleaded guilty to a conspiracy involving 100 kilograms or more of marijuana. However, the Court found that the defendant raised the issue of drug weight at his plea hearing, and was therefore not bound by the 100 kilogram base during the sentencing phase. J.A. 140.

Ultimately, the district court found that only 83.9 kilograms of marijuana could be attributed to the defendant by a preponderance of the evidence, and concluded that this resulted in a base offense level of 24. The court rejected the government's argument that the defendant failed to accept responsibility by filing objections to drug weights after pleading guilty to an offense that included a base-level drug amount. The court found that the defendant qualified for the safety-valve reduction and calculated his offense level to be a 19. The district court then determined that the safety valve reduction allowed the court to sentence below the statutory minimum and imposed a sentence of 13-months imprisonment and a term of three years supervised release.

The government objected to the court's ruling on the grounds that the court had, in effect, set aside the defendant's guilty plea as well as his admission at the plea hearing to participating in a conspiracy to distribute 100 kilograms or more of marijuana.

The United States filed a timely notice of appeal.

II.

This Court reviews a district court's drug quantity determination for purposes of sentencing for clear error. United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999). Where a challenge to a defendant's sentence implicates questions of both law and fact, questions of law are reviewed de novo, questions of fact are reviewed for clear error, and mixed questions of law and fact are reviewed under a standard that gives due deference to the district court. United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996).

On appeal, the government argues that the district court erred by disregarding the drug amount included in the indictment to which the defendant pleaded guilty at his Rule 11 colloquy. In addition, the government contends that the district court erred when it found that the defendant had accepted responsibility and qualified for a three-level adjustment for timely acceptance of responsibility. We address each of the government's arguments in turn.

III.

Disputed facts relevant to a defendant's sentence are properly presented to the district court for an independent resolution. See U.S.S.G. § 6A1.3(b). Where drug weights are justifiably disputed, the government bears the burden of proving by a preponderance of

the evidence the quantity of drugs for which a defendant should be held accountable at sentencing. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990)(overruled by statutory amendment on other grounds). In essence, the government contends that drug weights were not justifiably disputed in this action because the defendant admitted to a felony that included as an essential element a minimum drug quantity. See Apprendi v. New Jersey, 530 U.S. 466 (2000)(finding drug quantities to be an element of an offense that must be alleged in an indictment and proved beyond a reasonable doubt in order to subject a defendant to a period of imprisonment longer than the maximum sentence provided by the statute).

Following Apprendi, indictments charging conspiracy to commit a § 841 offense under § 846 commonly specify drug quantities for which individual members of a conspiracy are responsible. However, a defendant's guilty plea to a conspiracy indictment alleging quantity, but not ascribing any specified quantity to the individual defendant, does not automatically render the defendant's guilty plea an admission of the quantity charged in the conspiracy count. United States v. Gilliam, 987 F.2d 1009, 1014 (4th Cir. 1993). Further, a defendant's reservation of his right to challenge drug weight for sentencing purposes is not necessarily inconsistent with a guilty plea or a valid plea agreement. See Gilliam at 1013-14.

In Count 1 of the indictment charged against defendant Catala, the government included six separate offenses of conspiracy with intent to possess or distribute various quantities of marijuana, cocaine and methamphetamine. Count 1 also contained a section titled "Overt Acts" in which the United States listed specific drug amounts attributable to each defendant in the conspiracy.[2] However, the attributable drug weight listed in the overt acts section is vague at best, stating certain amounts generally as "quantities" rather than giving specific weights in some instances, failing at times to specify between amounts attributable to Catala and his co-conspirators, and giving overlapping dates that could represent a single trip made by the defendant from Albuquerque to the Virginia peninsula (e.g., Fall of 2001, November 2001, and November 28, 2001). J.A. 38-39.

The plea agreement is more specific, charging the defendant with the "lesser included offense" of "conspiracy to possess with intent to distribute more than 100 kilograms of marijuana." J.A.

---

[2] Victor Catala is connected with quantities of illegal substances in seven paragraphs of the indictment as follows: (1) paragraph 69 states Catala transported 75 pounds of marijuana in the "Fall of 2001;" (2) paragraph 73 states Catala transported 60 pounds of marijuana in "November 2001;" (3) paragraph 76 states Catala and co-conspirator Anthony Pacheco transported a "quantity of marihuana [sic] in separate vehicles" on November 28, 2001; (4) paragraph 79 states Catala transported one pound of methamphetamine in January 2002; (5) paragraph 81 states Catala transported "a quantity of marihuana [sic]" on January 16, 2002; (6) paragraph 83 states Catala transported 50 pounds of marijuana in February 2002; and (7) Catala transported a "quantity of marihuana [sic]" on February 21, 2002.

11

54. The plea agreement further states that the defendant "admits the facts announced at the Rule 11 proceeding and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt." J.A. 55. However, the plea agreement does not identify or ascribe any specific amount of marijuana attributable to Catala, nor does the agreement reference the overt act section of the indictment.

As stated earlier, the defendant at his Rule 11 colloquy specifically reserved his right to contest drug weight at his sentencing. At that time, the United States did not object. The defendant later filed written objections to drug amounts listed in his presentence report, thus preserving his earlier reservation regarding drug weight. Accordingly, the district court was within its discretion when it considered drug weight at the defendant's sentencing hearing to find that only 83.9 kilograms of marijuana were attributable to the defendant for sentencing purposes.

Accordingly, we disagree with the government's contention that the district court erred by allowing a three-level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. To the contrary, we believe that the district court's decision to award a downward departure was justified. For instance, the presentence report stated that Catala had been truthful and cooperative with the government after his arrest and this was not contested by the government. Moreover, the government endorsed the defendant's

12

position at the plea conference, stating that the defendant "has been cooperative in all regards." J.A. 66.

The government's only ground for denying the defendant his acceptance of responsibility is that Catala filed objections to the presentence report and argued drug weights at his sentencing, thus allegedly abandoning his plea agreement. See J.A. 118-20. As Gilliam makes clear, even where a defendant has signed a plea agreement that contemplates a minimum sentence and refers to an indictment alleging his involvement in a conspiracy for a base-level drug amount, a defendant may argue at sentencing that attributable drug weight is less than the statutory minimum. Gilliam, 987 F.2d at 1014. Accordingly, we cannot say that the court clearly erred in concluding that Catala accepted responsibility by admitting he had knowingly transported 83.9 kilograms of marijuana, see United States v. Pauley, 289 F.3d 254, 261 (4th Cir. 2002)(standard of review), modified, 304 F.3d 335, cert. denied, 537 U.S. 1178 (2003), or by finding that he met the criteria for the safety valve reduction.

Once the district court found that the defendant satisfied the criteria for the safety valve reduction under § 5C1.2, the district court was free to impose a sentence without reference to the mandatory minimum term of imprisonment and supervised release of § 841(b)(1)(B). Accordingly, the sentence imposed by the court was within its authority.

13

IV.

As a final matter, this Court must consider whether the district court abused its discretion by awarding a third-level adjustment pursuant to U.S.S.G. § 3E1.1(b) absent a government motion. Under the Feeney Amendment, Pub. L. No. 108-21, § 401 (Apr. 30, 2003), a district court may grant a third-level adjustment "upon a motion of the government." See U.S.S.G. § 3E1.1(b). Because Catala's sentence was determined after the Feeney Amendment, the district court was bound by the plain language of the Guidelines, and should not have awarded a third-level adjustment for timely acceptance of responsibility without a motion from the government.

However, in the period between the district court's sentencing of Catala and this Circuit's review on appeal, the Supreme Court decided United States v. Booker, __ U.S. __, 125 S. Ct. 738 (2005), severing and excising the "mandatory" provision from the Guidelines, and making the Guidelines "essentially advisory." Booker at 756-57. Further, Booker dictates that lower courts "must apply . . . the remedial interpretation of the Sentencing Act . . . to all cases on direct review." Id. at 769. Accordingly, we no longer construe § 3E1.1(b) to require a government motion before a district court can award a third-level adjustment, and must review the district court's determination under this new remedial interpretation of the Guidelines. By this we mean that a district

14

court may, in effect, grant a third level without a government motion by imposing a non-Guidelines sentence after following the steps set forth in Hughes. This is the same as a Guidelines sentence one level lower than the advisory Guidelines range based upon a factor listed in 18 U.S.C. § 3553(a).

Even after Booker, whether a government motion (or lack of motion) for a third-level adjustment remains an important factor when determining whether to award the third-level adjustment. See id. at 767 (sentencing court still required to consult the Guidelines and take them into account when sentencing). However, a district court may also make an independent determination based on whether the defendant has sufficiently assisted "by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." See U.S.S.G. § 3E1.1(b). In certain circumstances, a court should consider the rationale behind the government's refusal to make a motion for the third-level adjustment to determine whether such rationale falls within the parameters of § 3E1.1(b). See United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005)(court must consider the Guideline range as well as other relevant factors set forth in the Guidelines and 18 U.S.C. § 3553(a)).

In this case, we are satisfied that the district court

15

considered the defendant's timely acceptance of responsibility in light of § 3E1.1(b) when awarding the third-level adjustment. Because the advisory nature of the Guidelines would apply on remand, this Court finds that the lack of a government motion does not invalidate the district court's pre-Booker decision to award the third-level adjustment. See Booker at 769 (Booker applies to all cases on direct review). Accordingly, this Court will not remand this action based on the lack of a government motion. See United States v. Young, 470 U.S. 1, 15 (1985)(discretionary remand should not be exercised unless it seriously affects the fairness, integrity or public reputation of the judicial process).

V.

For the reasons stated above, the judgment of the district court is

AFFIRMED.

WILKINSON, Circuit Judge, dissenting:

The district court evidently sentenced Catala as if he had admitted responsibility for only an unspecified quantity of marijuana. See 21 U.S.C. §§ 841(b)(1)(C), 846 (2000). Thus the district court ignored the sentencing range specified in the plea document, which was based on "more than 100 kilograms of marijuana," see § 841(b)(1)(B)(vii), and attributed only 83.9 kilograms of marijuana to appellee as the predicate for his sentence.

The job of a district court during the plea hearing is to explain to the defendant the meaning of the terms in the plea agreement, not to alter those terms. See Fed. R. Crim. P. 11(b)(1). The district court has no authority to depart from the plain meaning of the agreement negotiated between the parties and memorialized in the plea document. See United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999). Unfortunately, the district court embarked on just such misadventure here when it assured the defendant that he could "always" dispute "the amount of weight" at a later stage, notwithstanding the specific drug quantity mentioned in the plea. The defendant was thus misled, through no fault of his own, into believing that he had reserved an unfettered right to challenge the drug weight on which his sentence would be based.

The majority is quite right to suggest that the defendant was misled. The majority is entirely wrong, however, to enforce the

17

terms of the misrepresentation.  For it is clear from the record that the government never intended to offer defendant an unfettered right to challenge drug weight, only the limited ability to contest weight between 100 and 1,000 kilograms, in exchange for his guilty plea.  The plea document, after all, specified the lower end of this weight range, and the government confirmed at the plea hearing its "understanding" that if "the presentence report [indicates] more than [1,000 kilograms] of marijuana, then [appellee is] only pleading guilty to the lesser charge" of more than 100 kilograms.

Moreover, the district court did nothing to disparage this interpretation of the plea when it noted that the sentence would be "based on the hundred kilograms or more of marijuana and not the thousand kilograms or more," and when it described the offense during the colloquy as "conspiracy to possess with intent to distribute more than a hundred kilograms of marijuana."  Based on such statements, the government's belief that Catala was admitting responsibility for more than 100 kilograms, and reserving only the right to dispute just how much more, was entirely reasonable.

Appellee and the government were thus proceeding at cross purposes; appellee believed that his acceptance of the plea deal did not waive his right to contest drug weight generally, while the government believed that only amounts above 100 kilograms were fair

game after the plea was entered.  In these circumstances, no valid agreement could have been created in the first place.[1]

Plea bargains are a species of contract.  See United States v. Bownes, No. 03-3016, 2005 U.S. App. LEXIS 7103, at *3 (7th Cir. 2005); United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986). Courts have therefore applied a variety of contract law doctrines to void or modify plea agreements.  See, e.g., United States v. Williams, 198 F.3d 988, 993-94 (7th Cir. 1999); United States v. Lewis, 138 F.3d 840, 841-43 (10th Cir. 1998) (permitting rescission of plea on the basis of "mutual mistake"); United States v. Wood, 378 F.3d 342, 349 and n.3, 350 (4th Cir. 2004) (ordering "specific performance" of constructively amended plea agreement).  One commonplace of contract law is that there must be a meeting of the minds as to all essential terms for a valid agreement to be created.  See 2 Murray on Contracts § 48 (Lexis 2001).  Here there was no such meeting of the minds concerning the weight of drugs admitted in the plea; quite the opposite, the parties' understandings of that issue were mutually exclusive.

---

[1]Catala argues that the government should be held to his understanding of the plea agreement, which he says the district court endorsed with statements such as "you can always" argue the amount of weight.  When the terms of a plea agreement have been orally modified during plea proceedings, we have sometimes enforced the modifications.  To do so, however, we have required either ambiguity in the plea document, see United States v. Gilliam, 987 F.2d 1009, 1011 (4th Cir. 1993), or acquiescence by the government in the substance of the modification, see United States v. Wood, 378 F.3d 342, 350 (4th Cir. 2004).  Neither of these circumstances is present here.

19

Plea agreements have been invalidated when there is "doubt whether any 'meeting of the minds' ever resulted from plea negotiations." Houmis v. United States, 558 F.2d 182, 183 (3d Cir. 1977); see also United States v. Bradley, 381 F.3d 641, 648 (7th Cir. 2004). Applying this principle here, I see no option but to hold the plea agreement void ab initio. Although the plea document is clear on its face, the district court led the defendant to believe that he had an absolute right to dispute drug weight. I would therefore vacate the judgment and remand accordingly.[2]

---

[2]Because I would dispose of the case in this manner, I express no opinion on whether the district court was correct to grant appellee a third level decrease in the absence of a government motion.