**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                          No. 99-4461

GLEN SCOTT SNOW,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael Jr., Senior District Judge.
(CR-98-45)

Argued: September 26, 2000

Decided: December 7, 2000

Before WILKINSON, Chief Judge, and MOTZ and
KING, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Chief Judge Wilkinson and Judge Motz joined.

---

## COUNSEL

**ARGUED:** Andrew Lyman Wilder, Charlottesville, Virginia, for Appellant. Bruce A. Pagel, Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Charlottesville, Virginia, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Glen Scott Snow pleaded guilty in the Western District of Virginia to being a felon in possession of a firearm, and he was sentenced to thirty-seven months' imprisonment. Snow appeals his sentence on the ground that the Government breached the plea agreement by refusing to move for a downward departure. *See* United States Sentencing Commission, *Guidelines Manual*, §5K1.1 (Nov. 1997). We find no error and affirm Snow's sentence.

I.

The tragic incident that led to Snow's conviction and sentence was the shooting death of Janice Garrison on November 29, 1997, while she stood on her property in northern Albemarle County. Although Mrs. Garrison's husband was nearby, he did not see who fired the fatal shot. An ensuing investigation revealed that Snow and several others were hunting in the woods near the Garrison property that day. Snow, who had previously been convicted of felony possession of controlled substances, was indicted by the grand jury in the Western District of Virginia in July 1998, pursuant to 18 U.S.C. § 922(g)(1), for being, on November 29, 1997, a felon in possession of a firearm.

Thereafter, in October 1998, Snow entered into a plea agreement with the United States, by which he consented to plead guilty to the § 922(g)(1) charge. The plea agreement provided in part:

> In return for the defendant's production of the firearm described in the Indictment to law enforcement authorities, and the defendant's truthful and thorough cooperation with said law enforcement officials, the government agrees to make a motion at sentencing pursuant to U.S.S.G. § 5K and agrees to recommend that this Court sentence the defendant to a period of probation rather than incarceration.

At the sentencing hearing in June 1999, the Government declined to make a § 5K1.1 motion, maintaining that Snow had failed to comply

with his obligation under the plea agreement to truthfully and thoroughly cooperate.[1] Snow had denied involvement in the shooting and, at sentencing, stated that he did not fire his gun and knew "in [his] heart there's no way [he] could have hurt anybody." J.A. 32.

In support of its claim that Snow had breached his plea agreement obligations, the Government presented the evidence of ATF Special Agent John Healey, who testified regarding the investigation into Mrs. Garrison's death. Agent Healey's testimony, as detailed *infra*, tended to implicate Snow in the fatal shooting. The district court determined that the facts related by Agent Healey provided a sufficient basis for the Government to conclude that Snow's account of the events surrounding Mrs. Garrison's shooting was not completely truthful. The court then sentenced Snow to thirty-seven months in prison, followed by thirty-six months' supervised release. Snow maintains on appeal that the district court erred in upholding the Government's decision not to move for downward departure.

## II.

It is settled that a defendant alleging the Government's breach of a plea agreement bears the burden of establishing that breach by a preponderance of the evidence. *See United States v. Conner*, 930 F.2d 1073, 1076 (4th Cir. 1991).[2] We review a district court's findings regarding "what the parties said or did" for clear error, "while principles of contract interpretation applied to the facts are reviewed de novo." *United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994) (quoting *L.K. Comstock & Co. v. United Eng'rs & Constructors*, 880 F.2d 219, 221 (9th Cir. 1989)). Although the historical facts are not

---

[1]It is undisputed that Snow satisfied his obligation to surrender the firearm.

[2]Snow asks us to adopt the Sixth Circuit's practice of requiring the Government to establish a defendant's breach by a preponderance of the evidence before repudiating its own promises under a plea agreement. *See United States v. Benjamin*, 138 F.3d 1069, 1074 (6th Cir. 1998). Our decision in *Conner*, however, clearly places the burden on Snow, as the party seeking enforcement of the plea agreement, to first establish by a preponderance of the evidence that he had fulfilled his obligations thereunder. *See Conner*, 930 F.2d at 1076.

in dispute here, the ultimate question of whether Snow breached the plea agreement by failing to provide "truthful cooperation" is one of fact, and we must therefore review the sentencing court's finding for clear error. *See Conner*, 930 F.2d at 1076.

III.

A.

We conclude that the district court did not clearly err in determining that Snow failed to provide "truthful and thorough cooperation," as he was obliged to do under the plea agreement. Snow emphasizes, and the district court acknowledged, that the plea agreement provision at issue did not contain the customary language explicitly reserving the Government's discretion to make or withhold its § 5K1.1 motion. This omission, Snow contends, should be construed to vest the determination of whether the defendant provided "truthful and thorough cooperation" in the sentencing court, rather than the Government.

We reject this contention. The Government's discretion with respect to plea negotiations and sentencing recommendations is inherent and expansive; it need not be explicitly reserved in the terms of a plea agreement. Where, as here, a plea agreement contemplates that the Government will make a § 5K1.1 motion if the defendant provides truthful cooperation, the Government remains the appropriate party to assess whether the defendant has performed that condition adequately. Even if the plea agreement is silent on the point, the Government retains the responsibility — and, with it, the discretion — to evaluate the defendant's truthful cooperation. Moreover, the Government is entitled to have that evaluation reviewed only for bad faith or unconstitutional motive. *See United States v. Huang*, 178 F.3d 184, 188-89 (3d Cir. 1999).

Our *Conner* decision instructs a sentencing court to initially determine whether the Government has bargained away its § 5K1.1 discretion; if so, the court must assume the task of evaluating whether the defendant has satisfied his contractual obligations. 930 F.2d at 1075. In interpreting *Conner*, we have implied that the Government may engage in such a bargain when, without specifically reserving its discretion, the Government conditions a § 5K1.1 motion on the defen-

dant's performance of certain obligations. *See, e.g.*, *United States v. Wallace*, 22 F.3d 84, 87 (4th Cir. 1994) ("The *Conner* agreement gave rise to an enforceable promise as a matter of simple contract law; the agreement in the instant case gave rise to no enforceable promise, explicitly reserving discretion rather than promising anything."). We have never squarely held, however, that the Government forfeits its discretion by failing to reserve it in a plea agreement, and we decline to do so here.

We recognize that there are other courts that base reviewability of § 5K1.1 decisions on the plea agreement's specific language — in effect, regarding contractual silence as waiving the Government's § 5K1.1 discretion. *See, e.g.*, *United States v. Price*, 95 F.3d 364, 368 (5th Cir. 1996) (government's indication that it "will file" a motion in exchange for substantial assistance surrenders its discretion, whereas if plea agreement states that government retains "sole discretion" over the decision, refusal to do so is reviewable only for unconstitutional motive); *United States v. Courtois*, 131 F.3d 937, 938-39 (10th Cir. 1997) (same).

In our view, a waiver of prosecutorial discretion by way of plea agreement must be explicit. *See Huang*, 178 F.3d at 188-89. In *Huang*, the Third Circuit acknowledged that the clause sought to be enforced by the defendant "did not specifically reserve to the Government the sole discretion to evaluate whether the defendant has rendered substantial assistance[.]" 178 F.3d at 188. The agreement was, however, "implicitly subject" to the Sentencing Guidelines, which "expressly lodge the decision to make the [§ 5K1.1] motion in the Government's discretion, regardless of whether the Government expressly reserved such discretion in the plea agreement." *Id.*

B.

In this case, we believe that the district court, to the benefit of Snow, employed a more exacting review of the Government's refusal to make a § 5K1.1 motion than was necessary. Applying an objective standard, the court reasonably concluded that there were sufficient facts to support the Government's judgment that Snow had not been "entirely truthful."

The evidence presented by Agent Healey revealed inconsistencies between Snow's account of the shooting incident and the evidence otherwise obtained by the Government. For example, one of Snow's friends informed the police that when Snow returned from hunting on the day of Mrs. Garrison's shooting, Snow told the friend that "rounds were whizzing by his head." This statement, which Snow subsequently disavowed, arguably placed him in the vicinity of the shooting.[3] The Government possessed other circumstantial evidence connecting Snow to the shooting. For instance, Snow's hunting partner reported that he and Snow had separated for about an hour, and that after hearing shots fired in the general area where Mrs. Garrison was shot, the hunting partner saw Snow emerge from that section of the woods.[4]

Based on the totality of their investigation, the law enforcement agencies arrived at a collective judgment that Snow had not been truthful. Presented with Agent Healey's testimony regarding the Government's evidence and the judgment drawn therefrom, the district court was clearly justified in finding objective support for the Government's decision to withhold the § 5K1.1 motion. This finding strongly suggests that the Government exercised its discretion in a proper manner.

### C.

Snow also insists that the Government acted unfairly by inducing a plea — and benefiting from some of its conditions — when it had no expectation of fulfilling its own side of the bargain. Snow suggests that the Government doubted the truthfulness of his denials at the time it entered the plea agreement, and that those pre-existing doubts informed the Government's § 5K1.1 decision. Yet insofar as the Government harbored such doubts, it was up to Snow to assuage them by either (1) demonstrating that his prior denials were worthy of cre-

---

[3]Mr. Garrison informed the authorities that he fired a handgun three times to scare off whoever had shot his wife.

[4]Agent Healey also testified concerning the results of polygraph examinations administered to Snow on two occasions: the first examination being inconclusive, and the second indicating deception on Snow's part. In sentencing Snow, the district court disregarded the polygraph evidence, finding that the results lacked "substantial indicia of reliability."

dence; or (2) confessing his actual involvement, if any, in the shooting. Snow was given ample opportunity to pursue either tack. Under the plea agreement, Snow bore the risk of non-persuasion, and, unfortunately for Snow, that risk was actualized.

We reject Snow's argument that the Government acted improperly in withholding its § 5K1.1 motion. Mere reliance on previously acquired evidence does not vitiate the Government's evaluation of a defendant's post-agreement truthfulness. At most, a defendant in Snow's position might invoke such reliance to support a claim that the Government entered into the plea agreement in bad faith, entitling the defendant to seek rescission. *See, e.g.*, *United States v. Knights*, 968 F.2d 1483, 1489 (2d Cir. 1992) (noting, in the context of bad faith analysis, that "it would have been fraudulent to have induced a defendant's plea with a promise that the government already knew it was not going to keep"). Here, despite his complaints of unfairness, Snow made no claim of actual bad faith, nor is there any reason to infer it.

Absent a claim of bad faith or unconstitutional motive, the sentencing court was right to honor the Government's judgment that Snow had failed to provide truthful and thorough cooperation. That this evaluation was founded, wholly or in part, on evidence possessed by the Government when it made the plea agreement is simply immaterial.

## IV.

For the foregoing reasons, we affirm the sentence imposed on Snow by the district court.

*AFFIRMED*