**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

EMILIO CHASE, a/k/a Dominic Mario
Chase, a/k/a E,
*Defendant-Appellant.*

No. 05-4727

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CR-04-42)

Argued: September 21, 2006

Decided: October 25, 2006

Before WILKINS, Chief Judge, KING, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge King and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** Brian Christopher Crockett, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Paul Thomas Camilletti, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Thomas E. Johnston, United States Attorney, Thomas O. Mucklow,

Assistant United States Attorney, Martinsburg, West Virginia, for Appellee.

---

**OPINION**

WILKINS, Chief Judge:

Emilio Chase appeals his sentence for distributing cocaine base within 1,000 feet of a school, *see* 21 U.S.C.A. §§ 841(a)(1), 860 (West 1999). We affirm.

I.

In November 2003, a confidential informant made several purchases of cocaine base from Chase in Martinsburg, West Virginia. During a subsequent search of a residence, West Virginia troopers found Chase hiding under the basement steps near a small amount of marijuana. They arrested him for obstructing an officer and marijuana possession. At that time, Chase falsely identified himself to the officers and the magistrate judge as "Dominic Mario Chase," his brother. Chase was placed on bond in the state case, and a federal indictment was later returned against Dominic Mario Chase ("Dominic") charging four drug-related offenses. Dominic was arrested and detained for several days in Maryland before Chase's deceit was discovered. A superseding indictment charging Chase was subsequently returned.

Chase entered into a written plea agreement with the Government in which he agreed to plead guilty to one count of distributing cocaine base within 1,000 feet of a school. The agreement contained the following pertinent language:

> 7. Contingent upon Defendant's payment of the $100.00 special assessment fee **within 40 days following the entry of his plea**, the United States will make the following **non-binding** recommendations:
>
> A. If in the opinion of the United States Attorney's Office, Defendant accepts responsibility and if the probation

office recommends a two-level reduction for "acceptance of responsibility," as provided by Guideline 3E1.1, then the United States will concur in and make such recommendation;

B. Should Defendant give timely and complete information about his own criminal involvement and provide timely notice of his intent to plead guilty, thereby permitting the United States to avoid trial preparation **and** if he complies with all the requirements of this agreement, the United States will recommend an additional one level reduction, so long as Defendant executes the plea agreement on or before Monday, February 28, 2005, at 12:00 p.m., and return[s] an executed copy to the United States by that day . . . .

. . . .

8. If in the opinion of the United States, Defendant either engages in conduct defined under the Application Notes of Guideline 3C1.1, fails to cooperate as promised, **fails to pay the special assessment within 40 days following the entry of his plea**, or violates any other provision of this plea agreement, then the United States will not be bound to make the foregoing recommendations, and the Defendant will not have the right to withdraw the plea.

J.A. 22 (emphasis in original).

Chase's Presentence Report (PSR) concluded that Chase qualified for sentencing as a career offender, *see United States Sentencing Guidelines Manual* § 4B1.1 (2004), thereby warranting a base offense level of 34. The PSR further recommended a reduction for acceptance of responsibility of either two or three levels, depending on whether the Government moved for the third-level reduction. *See* U.S.S.G. § 3E1.1.

At the sentencing hearing, the Government refused to recommend either the two-level reduction for acceptance of responsibility or the third-level reduction, claiming that Chase had not fulfilled his obliga-

tions under the plea agreement. While Chase provided some informa-
tion regarding the charged offense during his debriefing, in the
opinion of the Government, he was less than candid concerning cer-
tain details. Specifically, Chase only told the Government that his
cocaine source was a "white guy named Steve" whom he had met in
a parking lot. J.A. 101. The investigators who debriefed Chase did not
believe that "someone of Mr. Chase's position in the drug world
would be dealing with an unknown individual, someone that he
couldn't identify [any] further than what he provided . . . ." *Id.* at 102.
Based on the limited nature of the information provided and the fact
that Chase had lied previously about his identity, the Government
concluded that he possessed additional information that he was refus-
ing to disclose. The Government also submitted that Chase had failed
to pay the $100 special assessment.

Chase denied that he had breached the plea agreement, maintaining
that he gave the Government all of the information that it asked for
and that he was financially unable to pay the special assessment. He
therefore requested the two-level reduction and asserted that the plea
agreement bound the Government to move for the third-level reduc-
tion. And, although conceding that the third-level reduction could not
be granted absent a motion from the Government, Chase asked the
district court nonetheless to "fashion a sentence that reflects the addi-
tional one level." *Id.* at 105.

At the conclusion of the parties' arguments, the district court
granted the two-level reduction but refused to require the Government
to move for the third-level reduction. In light of Chase's status as a
career offender, the two-level reduction produced a total offense level
of 32. Because Chase's Criminal History Category was VI pursuant
to the career offender guideline, *see* U.S.S.G. § 4B1.1(b), the district
court determined his guideline range to be 210 to 262 months impris-
onment. The court sentenced Chase at the bottom of that range.

## II.

Section 3E1.1 of the sentencing guidelines provides as follows:

    (a)   If the defendant clearly demonstrates acceptance of
           responsibility for his offense, decrease the offense
           level by **2** levels.

(b)   If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

Chase contends that the Government breached the terms of the plea agreement by refusing to move for the third-level reduction for timely acceptance of responsibility. The Government, however, argues that under the plain language of the plea agreement, it had no duty to move for the third-level reduction because Chase failed to pay the $100 special mandatory assessment within 40 days of execution of the agreement, because it did not believe Chase had been completely truthful regarding the details of his offense, and because Chase lied about his identity when he was originally arrested by the West Virginia troopers.

Questions regarding how a plea agreement should be interpreted are legal questions, which we review de novo. *See United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000). A finding that the defendant breached a plea agreement by failing to sufficiently cooperate with the Government is factual in nature, and we review it for clear error. *See id.* Our review of a plea agreement is "guided by contract law, and parties to the agreement should receive the benefit of their bargain." *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997).

Here, the agreement clearly states—in bold print, no less—that Chase's failure to timely pay the special assessment relieved the Government of any obligation under the agreement to move for the additional one-level reduction. Although Chase explains why he could not pay the assessment, he offers no legal justification for why we should not enforce the terms of the bargain to which the parties agreed. Additionally, the record adequately supported a determination that Chase had not cooperated fully "in the opinion of the United States." J.A. 22; *cf. Snow*, 234 F.3d at 190 (holding that when "a plea agreement

contemplates that the Government will make a § 5K1.1 motion[1] if the defendant provides truthful cooperation, the Government remains the appropriate party to assess whether the defendant has performed that condition adequately"). Either basis justified the conclusion that the plea agreement did not obligate the Government to move for the third-level reduction.[2]

---

[1]Section 5K1.1 is structured similarly to § 3E1.1(b) and provides, in relevant part, "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

[2]In response to questions from the panel at oral argument, Chase seemed to argue, for the first time, that the Government had a duty independent of the plea agreement to move for the third-level reduction since Chase timely notified the Government of his intent to plead guilty. *See United States v. Richins*, 429 F. Supp. 2d 1259, 1262-65 (D. Utah 2006) (ruling that Government's refusal to move for additional one-level reduction for acceptance of responsibility could not properly be based on its view that defendant had not really accepted responsibility when defendant timely notified authorities regarding her intention to plead guilty). *But see United States v. Moreno-Trevino*, 432 F.3d 1181, 1187 (10th Cir. 2005) (holding that the district court did not err by not requiring the government to make a § 3E1.1(b) motion because the government's refusal to do so was "supported by its legitimate interest in reinforcing the principle within the criminal community that prosecutors will file acceptance-of-responsibility motions only for defendants who fully cooperate and intend to abide by their plea agreements, supervised release conditions, and federal law relating to their offenses of conviction" (citation & internal quotation marks omitted)); *cf. United States v. Butler*, 272 F.3d 683, 687 (4th Cir. 2001) (holding that government was not required to file a substantial assistance motion under U.S.S.G. § 5K1.1 when the "government conceded both that [the defendant] rendered substantial assistance and that its reason for refusing to file a downward departure motion was based upon alleged acts of wrongdoing that occurred after he rendered substantial assistance—namely, threats he made on the lives of co-defendants while incarcerated" in part because the "government's interest in deterring a defendant from threatening the life of a co-defendant" was legitimate). Because Chase did not raise this argument in his brief, it is waived. *See United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006); *cf. Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995) ("[A]ppellate courts generally will not address new arguments raised in a reply brief because it would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised.").

### III.

Chase next argues that the district court erred in ruling that it lacked authority to grant the third-level reduction in the absence of a Government motion. We disagree.

U.S.S.G. § 3E1.1(b) plainly states that a district court may grant the third-level reduction "upon motion of the government." Indeed, Congress directly amended a previous version of this guideline that allowed for the third-level reduction without a government motion. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21 § 401(g), 117 Stat. 650, 671-72 (2003). The commentary to the amended version provides, "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may *only* be granted upon a formal motion by the Government at the time of sentencing." U.S.S.G. § 3E1.1, comment. (n.6) (emphasis added). This language notwithstanding, Chase, relying on *United States v. Catala*, 134 Fed. Appx. 617, 623 (4th Cir. 2005), argues that a Government motion is no longer required in order to authorize the additional reduction now that *United States v. Booker*, 543 U.S. 220 (2005), has rendered the guidelines advisory only. That is incorrect.[3]

"That the guidelines are non-binding in the wake of *Booker* does not mean that they are irrelevant to the imposition of a sentence." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). Rather, the first step in the sentencing process remains to "*correctly* determine, after making appropriate findings of fact, the applicable guideline range." *Id.* (emphasis added). Because the guidelines plainly authorize the third-level reduction only upon the Government's motion, the district court was correct not to grant the reduction in the absence of such a motion. *See United States v. Smith*, 429 F.3d 620, 628 (6th Cir. 2005) (holding that government motion is required for § 3E1.1(b) reduction even after *Booker*).[4]

---

[3]Because *Catala* is unpublished, it does not constitute binding precedent. *See Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996).

[4]We emphasize that our holding that the district court lacks authority to grant a § 3E1.1(b) reduction absent a Government motion does not

IV.

Chase finally argues that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his prior convictions may not be used to enhance his sentence under the career offender guideline. Chase does not deny that proof of his prior convictions falls within the prior-conviction exception to *Apprendi*, *see Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998), but contends that the overruling of *Almendarez-Torres* may be imminent, *see Shepard v. United States*, 544 U.S. 13, 27-28 (2005) (Thomas, J., concurring in part and concurring in the judgment) ("*Almendarez-Torres* . . . has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided."). Nevertheless, until such overruling occurs, we must follow the decision when it controls. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) (reserving to the Supreme Court the "prerogative of overruling its own decisions" even if the ruling "appears to rest on reasons rejected in some other line of decisions" (internal quotation marks omitted)); *United States v. Cheek*, 415 F.3d 349, 352-53 (4th Cir. 2005) ("Even were we to agree with [the] prognostication that it is only a matter of time before the Supreme Court overrules *Almendarez-Torres*, we are not free to overrule or ignore the Supreme Court's precedents.").

V.

In sum, for the foregoing reasons, Chase's sentence is affirmed.

*AFFIRMED*

---

foreclose the possibility that the Government could be required to make such a motion, for example, if its refusal to do so were based on an unconstitutional motive. *See United States v. Moreno-Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005).