**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-5062

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GELACIO ARROYO-BENITEZ, a/k/a Roberto Benitez-
Soto,

Defendant - Appellant.

Appeal from the United States District Court for the Western
District of North Carolina, at Statesville. Richard L. Voorhees,
District Judge. (CR-04-62)

Argued: May 21, 2007              Decided: July 30, 2007

Before WILLIAMS, Chief Judge, and MOTZ and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Clinton Louis Rudisill, RUDISILL & ASSOCIATES, P.A.,
Marshall, North Carolina, for Appellant. Amy Elizabeth Ray,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:**
Gretchen C. F. Shappert, United States Attorney, Charlotte, North
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gelacio Arroyo-Benitez appeals his sentence of 87 months, imposed after he pleaded guilty to conspiracy to possess with intent to distribute powder cocaine, in violation of 21 U.S.C. §§ 841, 846 (2000). He contends that the district court erred in accepting his plea after the magistrate judge amended the indictment in court so that the drug quantity in the indictment matched that in the plea agreement. Because Arroyo-Benitez cannot show plain error, we affirm.

I.

A federal grand jury charged Arroyo-Benitez with conspiracy to possess with intent to distribute 50 grams or more of powder cocaine. After initially pleading not guilty, he changed his mind and entered into a plea agreement with the Government on April 7, 2005 ("Agreement I"). The parties stipulated in Agreement I that the Government could attribute to Arroyo-Benitez at least 3.5 kilograms but less than 5 kilograms of cocaine powder and at least 150 grams but less than 500 grams of crack cocaine. Agreement I also indicated that Arroyo-Benitez faced a sentence of not less than ten years' and no more than life imprisonment.

Arroyo-Benitez consented to a magistrate judge conducting the Rule 11 hearing. At the hearing, the magistrate judge noticed that the minimum drug quantity charged in the indictment, 50 grams, did

not constitute the minimum drug quantity necessary to support the ten-years-to-life sentence set forth in Agreement I. The magistrate judge adjourned the proceedings to allow the Government to cure the indictment.

The court reconvened approximately three months later. During the interim period, the parties signed an amended plea agreement ("Agreement II"), which deleted the reference to crack cocaine and listed the applicable statutory sentence as not less than five years' and no more than forty years' imprisonment. The Government did not, however, file a superseding indictment.

At a hearing on July 18, 2005, the Government moved to withdraw Agreement I and proceed with Agreement II; the magistrate judge granted the motion. The magistrate judge also noted, however, that the indictment still stated that the offense involved 50 grams or more of powder cocaine, but that "it would be 500 grams or more of powder that would give rise to a sentence of 5 to 40 [years]," as set forth in Agreement II. According to the magistrate judge, "if you just take the language of the bill of indictment itself, the maximum penalty for this offense based on that language would not be as indicated in the plea agreement. It would be less."

To resolve the discrepancy between the indictment and Agreement II, the magistrate judge changed the indictment to reflect 500 rather than 50 grams of cocaine powder. The

prosecutor, defense counsel, and Arroyo-Benitez all agreed to this revision and initialed the amended indictment indicating their agreement. The court then explained to Arroyo-Benitez his grand jury rights, and Arroyo-Benitez agreed to waive his right to have the grand jury amend the indictment. After further colloquy with Arroyo-Benitez, the magistrate judge accepted his guilty plea.

At a sentencing hearing on October 11, 2005, the parties stipulated to the existence of an independent factual basis to support the guilty plea, and the district court found that a factual basis existed to support the plea. Arroyo-Benitez then indicated that he had "objections" to the Presentence Report (PSR), and that it included "[a l]ot of mistakes." He stated, "Well, since we started . . . there was a mistake . . . . They charged me with . . . in the indictment 50 grams. Then they make me sign 500, you know, when the offense involved 250 grams." The court noted that the indictment had been amended to reflect 500 grams of cocaine powder, to which Arroyo-Benitez responded, "the offense involved 250 grams . . . . I thought that the 500 grams wouldn't change the amount on here, you know . . . ." He further maintained that he signed something "that's not true," and that while he was involved in a conspiracy, the 3.5 to 5 kilograms of cocaine indicated in the plea agreement was "too much."

In response, the court asked defense counsel if she wished to present any evidence regarding the drug quantity. The lawyer

stated that she did not have any evidence to offer, and Arroyo-Benitez declined to testify, stating, "Well, sir, I'm -- I'm tired of -- I want to go through with this thing, you know . . . . I just want something, you know, fair." The district court then accepted the plea agreement and adopted the PSR. The PSR calculated a sentencing range of 87 to 108 months. After rejecting Arroyo-Benitez's request for a variance, the district court sentenced him to 87 months' imprisonment.

Arroyo-Benitez timely appealed. In a brief filed pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), Arroyo-Benitez's counsel argues that the in-court amendment of the indictment violated Arroyo-Benitez's Fifth Amendment right to be charged by a grand jury. Whether a district court violated a defendant's Fifth Amendment grand jury right is a question of law we review <u>de novo</u>. <u>See</u> <u>United States v. Bolden</u>, 325 F.3d 471, 493 (2003).

## II.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. As a result of this requirement, "only the grand jury may broaden or alter the charges in [an] indictment." <u>United States v. Randall</u>, 171 F.3d 195, 203 (4th Cir. 1999). To amend an indictment requires "resubmission to the grand jury, unless the change is

merely a matter of form." Russell v. United States, 369 U.S. 749, 770 (1962). Arroyo-Benitez claims that the district court violated his Fifth Amendment right by accepting his guilty plea after the magistrate judge amended the indictment in court, rather than requiring the Government to amend the indictment by grand jury.

Arroyo-Benitez did not object at the Rule 11 hearing when the magistrate judge amended the indictment and asked the lawyers and Arroyo-Benitez to initial the change. Indeed, Arroyo-Benitez explicitly agreed to waive his right "to have the grand jury make [the] change." The Supreme Court has instructed that "the grand jury right can be waived." United States v. Cotton, 535 U.S. 625, 630 (2002) (citing Fed. R. Crim. Proc. 7(b); Smith v. United States, 360 U.S. 1, 6 (1959)).[1] We need not here decide whether Arroyo-Benitez properly waived his right to have a grand jury amend the indictment, however, because Arroyo-Benitez at a minimum forfeited his Fifth Amendment claim by failing to object to the amended indictment, and so must show plain error, which he fails to do. See United States v. Olano, 507 U.S. 725, 733 (1993) (noting the difference between waiver and forfeiture, and explaining that

---

[1]We note that because it appears that Arroyo-Benitez waived his grand jury rights at the time the magistrate judge amended the indictment, the amended indictment could possibly be treated instead as an information. But because neither party has argued on appeal that the charging document was an information, we treat it, as they have, as an indictment.

forfeiture "is the failure to make the timely assertion of a right").

In Cotton, the Supreme Court considered a forfeited claim that an indictment failed to allege threshold drug quantities, and held that "defects in an indictment do not deprive a court of its power to adjudicate a case." 535 U.S. at 630. Instead, the Court concluded that when a defendant fails to object to a defective indictment at trial, the plain error standard of Federal Rule of Criminal Procedure 52(b) applies. Id at 631. "Under th[e plain error] test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." Id. (internal quotation marks and alterations omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 631-32 (internal quotation marks and alterations omitted).

The Cotton Court held that the Government's error in failing to allege a drug quantity in the indictment, while plain, "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" because the evidence that the conspiracy at issue involved at least 50 grams of cocaine base -- the minimum drug quantity required to support the enhanced sentence imposed by the district court -- "was overwhelming and essentially

-7-

uncontroverted." Id. at 632-33 (internal quotation marks omitted). According to the Court, "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." Id. at 633.

Here, too, "overwhelming and essentially uncontroverted" evidence exists that Arroyo-Benitez participated in the conspiracy for which he was sentenced -- one involving at least 500 grams of cocaine powder. Agreement II contained a stipulation that "[t]he amount of cocaine powder that was known to or reasonably foreseeable by the defendant was at least 3.5 kilograms but less than 5 kilograms." Only after the prosecutor and defense counsel stipulated at sentencing "to the existence of an independent basis in fact to support the plea," did the district court accept Agreement II as "a stipulation of the parties in terms of the foreseeable amount of cocaine."[2]

Hence, we have no trouble concluding, like the Supreme Court in Cotton, that "the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at

---

[2]Arroyo-Benitez did claim at sentencing that the offense involved only 250 grams of cocaine powder, even though he had already pleaded guilty based on an agreement stipulating that the offense involved between 3.5 and 5 kilograms of cocaine powder. But when the district court gave him an opportunity to present evidence about the drug quantity, his attorney stated she had no evidence to offer and Arroyo-Benitez himself declined to testify. His sentencing claims thus do not undermine the district court's finding that there was a factual basis to support the plea agreement.

least [500] grams of cocaine [powder]," 535 U.S. at 633. Accordingly, if the district court committed any error here by allowing the in-court amendment of the indictment, it did not affect the "fairness and integrity of the criminal justice system," id. at 634, as is required for Arroyo-Benitez to show plain error.[3]

_____

[3]Arroyo-Benitez has also filed a pro se supplemental brief raising two additional claims. First, he contends that his counsel was ineffective for failing to alert the district court that Arroyo-Benitez did not understand English well, for "coerc[ing him] to sign a plea agreement he did not fully understand," and for failing to argue that the Government had agreed to deport him to Mexico. An ineffective assistance of counsel claim is generally not cognizable on direct appeal, however, but instead should be asserted in a post-conviction motion under 28 U.S.C. § 2255 (2006). See United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999). We have recognized an exception to this general rule when "it conclusively appears from the record that defense counsel did not provide effective representation." Id. (internal quotation marks omitted). But the record here does not conclusively establish that counsel was ineffective. Therefore, we conclude that Arroyo-Benitez's claim is not cognizable on direct appeal.

Arroyo-Benitez next argues that the Government promised to deport him immediately to Mexico upon his guilty plea, and that the Government breached the plea agreement when it failed to argue for deportation at sentencing. "It is settled that a defendant alleging the Government's breach of a plea agreement bears the burden of establishing that breach by a preponderance of the evidence." United States v. Snow, 234 F.3d 187, 189 (4th Cir. 2000). Arroyo-Benitez has offered no evidence that the Government offered to immediately deport him. Agreement II, which Arroyo-Benitez signed, contains no promise of deportation, but it does contain an integration clause stating, "There are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement and none will be entered into unless executed in writing and signed by all parties." Accordingly, we reject Arroyo-Benitez's argument that the Government breached the plea agreement by failing to deport him immediately after his guilty plea.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.