**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4985

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERNIE EMBREE,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  James P. Jones, Chief District Judge.  (1:01-cr-00002-jpj-AL)

Argued:  November 1, 2007          Decided:  January 31, 2008

Before GREGORY and DUNCAN, Circuit Judges, and James A. BEATY, Jr., Chief United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by unpublished opinion.  Chief District Judge Beaty wrote the opinion, in which Judge Gregory and Judge Duncan joined.

**ARGUED:** Fay Frances Spence, Roanoke, Virginia, for Appellant. Zachary T. Lee, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON BRIEF:** Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, for Appellant. John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BEATY, Chief District Judge:

Defendant Ernie Embree appeals the district court's application of a 2-level sentencing enhancement for possession of a dangerous weapon in connection with the offense to which he pled guilty. On January 20, 2002, Embree signed a plea agreement with the Government in which he agreed to plead guilty to Count Two of a multiple count indictment, which charged him with conspiracy to possess with intent to distribute and distribute more than 500 grams of a mixture of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Embree was sentenced to 125 months in prison. The court entered an Amended Final Judgment Order on September 19, 2006. Embree timely appealed. On appeal, Embree contends that the Government breached the plea agreement by arguing for the 2-level enhancement for possession of a dangerous weapon in connection with the offense at sentencing in contradiction to a stipulation not to do so contained in the plea agreement. After a thorough review of Embree's claims, we affirm the district court's decision.

I.

In October 2000, a confidential informant informed Agent Brian Snedeker of the Drug Enforcement Agency (DEA) that Embree was involved in the distribution and manufacture of methamphetamine and marijuana. The informant also told Agent Snedeker that Embree

2

carried handguns and a concealed knife in "like a shoulder harness" during drug transactions. The investigation revealed that Embree loaned money to Donna Richardson to finance her trips to California to purchase methamphetamine. Embree and Richardson would then distribute the methamphetamine that was purchased to friends and co-workers. After Embree became upset at a loss of money, he ended his attempts to obtain methamphetamine in California and began attempts to manufacture his own methamphetamine.

On June 29, 2001, Embree was arrested by DEA agents at his residence. At the time of Embree's arrest, a 6-8 inch knife with brass knuckles matching the description given earlier by the informant was found in Embree's vehicle. Also located within Embree's residence were numerous holsters for large caliber revolvers and automatic handguns.

On January 30, 2002, Embree signed a plea agreement with the Government in which he pled guilty to Count Two of the indictment charging him with conspiracy to possess with intent to distribute and distribute more than 500 grams of a mixture of methamphetamine. The plea agreement provided in relevant part:

> D.   REMEDIES FOR BREACH OF PLEA AGREEMENT
>
> I understand that if I breach any provision of this agreement, at any time, that the United States Attorney's office [sic] may, at its election, pursue any or all of the following remedies: (a) declare this plea agreement null and void and proceed to trial; (b) refuse to recommend that I be credited with acceptance of responsibility . . . (g) refuse to abide by any other sentencing or other stipulations contained in this

3

agreement; (h) take any other action provided for under this agreement or by statute, regulation or court rule.

## H.   ACCEPTANCE OF RESPONSIBILITY

I hereby agree and stipulate that if I do any of the following, I should not receive credit for acceptance of responsibility and the United States will be free to make any recommendations it wishes at sentencing or to declare a breach of this plea agreement and seek the remedies set forth in paragraph D: (1) attempt to withdraw my guilty plea, (2) deny that I have committed any crime that I have pled guilty to, (3) fail to cooperate with law enforcement agents, (4) fail to testify truthfully, as to any matter, if called upon to do so (at my sentencing or any other court proceedings, . . . (6) make a false statement . . .

## J.   STIPULATIONS AND RECOMMENDATIONS

The United States stipulates that at the time of the execution of this plea agreement it possesses no information which would prevent me from meeting the criteria set forth in 18 U.S.C.A. § 3553(f)(1)-(4) and U.S.S.G. § 5C1.2(1)-(4).  In addition the United States will afford me the opportunity to meet the criteria contained in 18 U.S.C.A. § 3553(f)(5) and U.S.S.G. § 5C1.2(5).  The parties further stipulate that the signing and submission of this plea agreement meets the criteria contained in U.S.S.G. § 3E1.1(b)(2).

## L.   SUBSTANTIAL ASSISTANCE

I understand and agree that I must provide complete and truthful information to attorneys and law enforcement officers of the Government and to neither attempt to protect any person or entity through false information or omission, nor falsely implicate any person or entity. . . . I further understand that any violation of the terms of this section may, at the election of the United States Attorney's Office, be treated as a breach of this Plea Agreement, and the United States Attorney's office [sic] may exercise any right it may have under this Plea Agreement in the event of breach by the defendant, including but not limited to those remedies set forth in section D of this Plea Agreement.

On March 4, 2002, Embree appeared before the district court, and entered his plea of guilty to Count Two of the indictment. Following Embree's plea hearing, a presentence report ("PSR") was prepared by the probation officer. Based on the available information about the knife, gun holster and alleged firearms, the probation officer recommended a 2-level enhancement for possession of dangerous weapons in connection with the offense pursuant to U.S.S.G. § 2D1.1(b)(1). The PSR also included a 3-level deduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Embree objected to the finding in the PSR regarding possession of dangerous firearms and a knife in connection with the offense, arguing that he never carried any guns on his person or in his vehicle, and that the knife was used in his auto repair business. The United States objected to Embree receiving credit for acceptance of responsibility arguing that he failed to fully accept responsibility for his role in the distribution of methamphetamine.

Embree's sentencing hearing began on May 20, 2002, and upon the court's own motion was continued to May 29. At the May 29 sentencing hearing, the Government argued that Embree should not receive credit for acceptance of responsibility and presented evidence that Embree possessed a knife in connection with the conspiracy to distribute methamphetamine in support of the probation officer's recommendation for a 2-level enhancement for possession of dangerous weapons in connection with the offense. In

contending that Embree should not receive the benefit of the 3-level deduction for acceptance of responsibility, the Government argued that during the course of providing a factual basis for his plea, Embree stated under oath that he "personally didn't sell any methamphetamine, myself," and that he failed to accept responsibility for all of the conduct relevant to the offense. The Government then called Embree's co-conspirator, Donna Richardson, to testify as to Embree's involvement in the conspiracy. Richardson testified that Embree financed her trips to California to purchase methamphetamine and that after taking a portion for herself, Embree sold the remaining methamphetamine to friends and co-workers. Embree also testified on his own behalf regarding his acceptance of responsibility. Embree testified that he had sold methamphetamine to friends, but that although he had possessed chemicals with the intent to manufacture methamphetamine, he had never actually manufactured any methamphetamine. Finally, Embree testified regarding his involvement in the conspiracy, which conflicted with testimony given by Richardson.

Regarding the Government's contention that Embree possessed a dangerous weapon in connection with the offense, the Government called Agent Snedeker to testify. Agent Snedeker recounted the information he received from the informant regarding Embree's possession of a knife and firearms which were kept in a gun holster when Embree distributed methamphetamine. The Government also

6

presented evidence of a knife that was found in Embree's vehicle and gun holsters found in Embree's residence at the time of his arrest. Embree testified that he used the knife for cutting fiberglass at his business and denied possessing firearms other than a .22 caliber pistol that he bought for his wife and that was kept at his residence.

At the close of evidence, the district court ruled that before making any determinations regarding Embree's acceptance of responsibility or the possession of firearms or a knife in connection with the offense, the matter should be continued until Embree had been debriefed by the Government, affording him the opportunity to fully and truthfully provide information concerning the offenses with which he was involved.[1]

At the reconvening of Embree's sentencing hearing on June 13, 2002, Agent Snedeker was recalled to testify concerning Embree's debriefing. Agent Snedeker testified that Embree told him that he only received "[a] half ounce to two ounces each trip" from Donna Richardson and that he purchased small amounts of methamphetamine from other individuals. He also testified that Embree stated that he had manufactured methamphetamine on one occasion. Finally,

---

[1]Embree's initial counsel died after Embree signed the plea agreement, but before he entered his plea of guilty. As a result of the reassignment of counsel, at the time of his sentencing hearing on May 29, 2002, Embree had not yet had the opportunity to be debriefed by the Government.

Agent Snedeker testified that Embree admitted selling methamphetamine to people at work and other associates.

At the conclusion of Agent Snedeker's testimony, addressing both the Government and Embree's objections, the district court found Embree's credibility to be "suspect" with regard to the true purpose of the weapons and the extent of his involvement in the methamphetamine transactions with Richardson. Specifically, the district court found that Embree's admission that he financed Richardson's trips to California to buy methamphetamine was sufficient within the meaning of the acceptance of responsibility provision of the Sentencing Guidelines to afford him the benefit of receiving the 3-level deduction. However, the district court also denied Embree the benefit of application of the safety valve provision pursuant to U.S.S.G. § 5C1.2, finding that Embree had not met the requirements of the provision by "truthfully setting forth his involvement in the same course of conduct as involved with the offense of conviction." Specifically, the court noted that while Embree agreed to financing the trips to California, "that's essentially all that he agrees to." The court found more credible the evidence that Embree was involved not only in the manufacture of methamphetamine, but that he also sold methamphetamine "to a much greater extent than he's admitted." Finally, the district court denied Embree's objection to the 2-level enhancement for possession of a dangerous weapon in connection with the offense

8

finding that Embree did in fact possess both firearms and a knife in connection with the conspiracy to distribute methamphetamine. Concluding that Embree had a total offense level of 31, criminal history category of 1, and sentencing guideline range of 120 months to 135 months of imprisonment, Embree was then sentenced to 125 months in prison.

## II.

On appeal, Embree argues that the Government breached the plea agreement by arguing at sentencing for a 2-level enhancement for possession of a dangerous weapon in connection with the offense after stipulating in the plea agreement that it possessed "no information which would prevent [Embree] from meeting the criteria set forth in 18 U.S.C.A. § 3553(f)(1)-(4) and U.S.S.G. § 5C1.2(1)-(4)." The Government contends that Embree failed to raise the argument that a breach of the plea agreement had occurred at the time of his sentencing and thus, we should affirm the sentence imposed by the district court unless we find plain error.[2] Additionally, the Government argues that the plea agreement

---

[2]When arguing against the 2-level enhancement at sentencing, defense counsel argued that the Government stipulated in the plea agreement that it had no information which would prevent the application of the safety valve provision. Although trial counsel failed to use the word "breach," counsel did make the argument that the Government's position at sentencing was inconsistent with its stipulation in the plea agreement. Therefore, we hold that Embree has not raised this issue for the first time on appeal.

9

contains no stipulations or agreements relating to the application of the 2-level enhancement for possession of dangerous weapons and that, therefore, it is not in breach of the plea agreement by arguing for such an application at sentencing. Finally, the Government contends that Embree breached the plea agreement, thereby relieving it of its obligations under the agreement, by: (1) making a false statement under oath; (2) failing to accept responsibility; and (3) providing false information at the debriefing. We will review each of Embree's claims in turn.

i.

In calculating Embree's sentencing guideline range, the district court applied a 2-level enhancement for possession of a dangerous weapon in connection with the offense to which he pled guilty pursuant to U.S.S.G. § 2D1.1(b)(1). Embree argues that the Government breached its written plea agreement by arguing for the dangerous weapons enhancement at sentencing. The Government contends that the plea agreement contains no stipulations or agreements relating to the application of the dangerous weapons enhancement under U.S.S.G. § 2D1.1, and that, therefore, it is not in breach of the agreement by arguing for the enhancement at sentencing.

Although plea agreements between the Government and a defendant are unique and call for special due process

10

considerations, the judicial interpretation of a plea agreement is largely governed by the law of contracts. United States v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991). If the Government breaches express or implied terms of the plea agreement, a violation of due process occurs. Mabry v. Johnson, 467 U.S. 504, 509 (1984). Because violations of plea agreements on the part of the Government not only violate a defendant's constitutional rights, but also involve the "honor of the Government, public confidence in the fair administration of justice, and the effective administration of justice," a breach of the agreement by the Government constitutes plain error. United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997).

In the present case, the Government stipulated that it possessed no information that would prevent application of 18 U.S.C. § 3553(f)(1)-(4) and U.S.S.G. § 5C1.2(1)-(4). Title 18 of United States Code section 3553(f)(1)-(4) and U.S.S.G § 5C1.2(1)-(4) concern the application of the so-called "safety valve" provision. The safety valve provision entitles the sentencing judge to impose a sentence in accordance with the guidelines without regard to the statutory minimum sentence, if certain criteria are met. The criteria for application of the safety valve provision are set out in 18 U.S.C. § 3553(f)(1)-(4) and U.S.S.G. § 5C1.2. One of the criteria included in those statutes, which are identical, states that: "the defendant did not use violence or

11

credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." 18 U.S.C. § 3553(f)(2) (2002); U.S.S.G. § 5C1.2(2)(2002). The statute pertaining to the application of the dangerous weapons enhancement which is at issue in this appeal is found in U.S.S.G. § 2D1.1(b)(1) and provides, "if a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1) (2002).

We agree that on its face, the plea agreement contains no language regarding the dangerous weapons enhancement provision under U.S.S.G. § 2D1.1. However, we do not agree that the Government should benefit from such a strict interpretation of the plea agreement. See, United States v. Bowler, 585 F.2d 851, 854 (7th Cir. 1978) (holding that a plea agreement is not the appropriate context for "rigidly literal" construction.); Palermo v. Warden, 545 F.2d 286, 295 (2d. Cir. 1976) *cert. dismissed*, 431 U.S. 911 (1977) (holding that the Government's invocation of restrictive contract principles is "disingenuous"). By stipulating that it had no information that would prevent Embree from meeting the criteria in U.S.S.G. § 5C1.2(1)-(4), the Government was stipulating that it had no information that Embree possessed a firearm or other dangerous weapon in connection with the offense. In order to apply a 2-level enhancement for possession of a dangerous weapon in connection with the offense under U.S.S.G. §

12

2D1.1(b)(1) a showing is required that Embree did in fact possess a weapon in connection with the conspiracy to distribute methamphetamine. The Government argued at sentencing that this indeed was the case with respect to Embree.

If the plea agreement at issue is clear and unambiguous, the agreement should be enforced as written. United States v. Harvey, 791 F.2d 294, 301 (4th Cir. 1986). In the present case, the Government contends that because the plea agreement makes no mention of U.S.S.G. § 2D1.1, there could be no ambiguity as to whether the plea agreement prohibited the Government from arguing for the enhancement under section 2D1.1 at Embree's sentencing. Embree argues that the stipulation regarding U.S.S.G. § 5C1.2 is at least ambiguous as to whether it prevents the Government from arguing as it did for the enhancement under section 2D1.1. Because the challenged stipulation is subject to two interpretations, the one proffered by the Government and the one advanced by the Defendant, and because there is no extrinsic evidence in the record from which the Court could determine the mutual understanding of the parties, we conclude that the stipulation at issue is ambiguous.

This result is consistent with United States v. Harvey, where this Court held that "constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant . . . for imprecisions or

13

ambiguities in plea agreements." 791 F.2d at 300-01. "This is particularly appropriate where, as will usually be the case, the Government has proffered the terms or prepared a written agreement - for the same reasons that dictate that approach in interpreting private contracts." Id. at 301. Thus, where there is no extrinsic evidence of a mutual understanding of the interpretation urged by the Government, ambiguities or imprecisions in the plea agreement will be construed against the Government and in favor of the defendant. Id. at 301-303. Applying these principles here, we will resolve the ambiguity as to whether the stipulation as stated in the plea agreement concerning the safety valve provision prohibited the Government from arguing for application of the dangerous weapons enhancement under section 2D1.1, in favor of Embree.

## ii.

Turning now to the merits of Embree's argument that the Government breached the stipulation in the plea agreement by arguing for the 2-level enhancement under section 2D1.1, this case is analogous to United States v. Badaracco, 954 F.2d 928 (3d Cir. 1992). In Badaracco, the Government entered into a plea agreement with the defendant in which it stipulated that the offense did not involve more than minimal planning. Id. at 933. However, in accordance with the presentence report, the district court increased the defendant's offense level because the probation

14

department found that the offense involved "more than minimal planning." Id. at 939. At the defendant's sentencing hearing, the Government changed its position and argued that "there was an affirmative step taken by Mr. Badaracco indicating that he was concealing something . . ." Id. The Third Circuit Court of Appeals concluded that the Government's argument made contrary to the plea agreement provided a basis for the district court to reject the Government's stipulation and to adopt the recommendation of the probation department. Id. at 940. The court held that where the Government stated in court that there was an affirmative step taken by the defendant indicating that he was concealing something, and presented direct evidence to that effect, the Government had indeed breached the plea agreement. Id. at 941. The court further held that because the Government was aware of the defendant's concealment of his interests when he entered into the plea agreement, "the Government [was] not free to breach its agreement with a defendant because it decides after the fact that it has made a bad bargain." Badaracco, 954 F.2d at 941 (holding that the Government breached the plea agreement because in part, the prosecutor knew at the time she entered into the plea agreement of the defendant's potential for prosecution in another jurisdiction, and testimony that she "was hoping that [the defendant] wouldn't ask her specifically about the coverage of the agreement.").

15

Similarly, in the present case, the Government entered into a stipulation in a plea agreement and changed its position at sentencing. In this instance, the Government stipulated that at the time of the plea agreement, it had no information that Embree possessed a dangerous weapon in connection with the offense. Like the prosecutors in Badaracco, the Government did in fact possess information which contradicted the stipulation they later entered into under the agreement. The record in this case reveals that in fact, the Government had knowledge that Embree possessed multiple firearms in connection with the offense as a result of Agent Snedeker's interviews with the confidential informant leading up to Embree's arrest and because of the gun holsters recovered from his residence at the time of his arrest. Further, the Government knew of Embree's possession of a knife in connection with the offense before it entered into the stipulation in the plea agreement because of the informant's conversations with Agent Snedeker, to which he testified, and because the knife was recovered from Embree's vehicle at the time of his arrest.

The Government freely entered into the plea agreement with Embree and expressly agreed to the stipulation that it possessed no information which would prevent application of the safety valve provision. In so doing, the Government was agreeing that it possessed no information that Embree possessed a dangerous weapon in connection with the offense. Embree relied on the Government's

16

promise to adhere to this stipulation in deciding to enter a plea of guilty and thus to forego his constitutional right to a jury trial. The Government then changed its position at sentencing by arguing that Embree possessed a weapon in connection with the offense to which he pled guilty. The Government's argument for a 2-level enhancement for possession of a dangerous weapon in connection with the offense "violated the spirit, if not the letter" of the plea agreement. Badaracco, 954 F.2d 928, 940 (3d Cir. 1992). The Government's argument provided the district court with a basis for not only denying Embree the benefit of application of the safety valve provision, but also for the application of the 2-level sentencing enhancement. Therefore, we conclude that by arguing for the 2-level enhancement under U.S.S.G. § 2D1.1(b)(1), the Government indeed breached its obligations under the Plea Agreement.

## iii.

Notwithstanding the Court's holding that the Government breached the plea agreement in the manner previously described, we now address the Government's argument that Embree breached the agreement, thereby excusing any breach on behalf of the Government. The party asserting the breach must prove by a preponderance of the evidence that he fulfilled all of his obligations under the agreement. United States v. Snow, 234 F.3d 187, 189 (4th Cir.

17

2000). Thus, Embree as the party asserting the breach, must also establish that he has satisfied his own obligations under the plea agreement in order to prevail. Id. The Government in this regard contends that Embree breached the plea agreement by: (1) making a false statement under oath; (2) failing to accept responsibility; and (3) providing false information at the debriefing.

Although the facts of this case are not in dispute, the question of whether Embree breached the plea agreement by making a false statement during his testimony at his plea hearing is an issue of fact, and therefore, we review the district court's findings on this issue for clear error. Snow, 234 F.3d at 189. The district court acknowledged and freely relied upon the Government's argument at sentencing that Embree had testified inconsistently. The district court, however, did not find that Embree had committed perjury at his plea hearing because Embree did in fact testify at sentencing that he sold methamphetamine on occasion. The district court therefore interpreted Embree's statement at his plea hearing as a denial that he was engaged in the widespread or commercial sale of methamphetamine. As such, the district court further found that Embree's statements were not necessarily inconsistent. The Government has not appealed the district court's findings in this regard, and we hold that the district court did not clearly err in finding that Embree did not make a false statement under oath in breach of the plea agreement.

18

Second, with regard to the Government's contention that Embree committed a breach of the plea agreement by failing to accept responsibility for the offense to which he pled guilty in violation of paragraph H of the plea agreement, this is also a question of fact which we review for clear error. Snow, 234 F.3d at 189. In overruling the Government's objection to Embree's receipt of an adjustment for acceptance of responsibility, the district court found that Embree had admitted his involvement within the meaning of the acceptance of responsibility provision. Specifically, the district court found that Embree admitted to financing Richardson's trips to California to purchase methamphetamine, and that that was sufficient to allow him to obtain the deduction for acceptance of responsibility. Again, the Government does not dispute the district court's factual findings, and we conclude that the district court did not clearly err in finding that Embree did not fail to accept responsibility for conspiracy to distribute methamphetamine in breach of the plea agreement.

Finally, however, the Government's contention that Embree provided false information to officers in his debriefing has merit and it is consistent with the district court's findings of fact. Whether Embree's false statements constitute a material breach of the plea agreement is a question of law, which we review de novo. United States v. Martin, 25 F.3d 211, 217 (4th Cir. 1994) ("principles of contract interpretation applied to the facts are

19

reviewed de novo."). One of the requirements of the safety valve provision is that the defendant "truthfully provide[ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. . ." U.S.S.G. § 5C1.1(a)(5). Further, Paragraph L of the plea agreement obligated Embree to provide complete and truthful information to attorneys and law enforcement and not to give any false information. In denying Embree the benefit of the safety valve provision, the district court found that he did not truthfully set forth his involvement in the same course of conduct as involved with the offense. Specifically, the district court found that while Embree agreed that he financed Richardson's trips to California, the evidence sufficiently established that he not only was involved in the later manufacture of methamphetamine to an extent "much greater than he's admitted," but that he also personally sold methamphetamine "to a much greater extent than he's admitted."

Embree argues, however, that in the plea agreement, he reserved the right to provide evidence about conduct relevant to the same course of conduct in support of his request for application of the safety valve provision. In raising this argument, Embree contends that any breach on his behalf regarding the information he provided to law enforcement and at sentencing is analogous to the defendant's arguments in United States v. Peglera,

20

33 F.3d 412 (4th Cir. 1994). In <u>Peglera</u>, the defendant appealed the imposition of his sentence arguing that the Government had breached a plea agreement in which it agreed to recommend the lowest end of the sentencing guidelines and a 3-level reduction for acceptance of responsibility. <u>Id.</u> at 413. At sentencing the Government argued that it was no longer bound by the terms of the plea agreement because Peglera testified that he personally distributed only powder cocaine, and not the cocaine base for which he pled guilty. <u>Id.</u> at 412-13. In <u>Peglera</u>, we held that while the Government's argument had considerable force under some circumstances, it failed in this instance because the agreement expressly reserved Peglera's right to argue that the "Schedule II narcotic controlled substance for which he should be held accountable is cocaine hydrochloride [powder cocaine]." <u>Id.</u> at 414. Further, the Government had acknowledged Peglera's right to dispute his responsibility for distributing cocaine base at sentencing. <u>Id.</u> Therefore, we concluded that Peglera had not breached the plea agreement so as to excuse the Government's own breach.

The present case, however, can be distinguished from <u>Peglera</u> because there was no similar provision in Embree's plea agreement which entitled him to give false information regarding the extent of his involvement in the conspiracy to which he pled guilty. In fact, this plea agreement required Embree to fully and truthfully disclose his involvement in the offense. The district court found

21

that Embree failed to provide truthful information regarding the conspiracy to distribute methamphetamine. By failing to provide complete and truthful information relating to the offense, Embree breached his agreement with the Government. See also, United States v. Lyons, No. 05-4735, 2006 WL 3253195 (4th Cir. Nov. 8, 2006)(holding that where defendant was not initially truthful with law enforcement concerning information on drug deals and failed to "cooperate" with the government in accordance with the terms of the plea agreement, the government did not breach the agreement by failing to move for the normal 50% 5K1.1 departure and instead moving for a 25% reduction). Unlike Peglera, Embree can point to no provision in this agreement that excuses his breach. According to paragraph D of the plea agreement, upon Embree's breach of the agreement, the Government was entitled to refuse to abide by the stipulations contained in the agreement, including the stipulation that it had no information that Embree possessed a dangerous weapon in connection with the offense. Therefore, we hold that Embree's breach of the plea agreement based upon his failure to fully and truthfully disclose his involvement in the conspiracy precludes him from the relief he has requested in his appeal. Accordingly, we conclude that the district court did not err in imposing a 2-level enhancement for possession of a dangerous weapon in connection with the offense.

22

### III.

For all the reasons stated above, the district court's application of a 2-level enhancement against Embree under U.S.S.G. § 2D1.1(b)(1) is affirmed.

<u>AFFIRMED</u>